1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RODERICK L. MITCHELL,                        No.  2:14-cv-2993 MCE AC (PS)

12                  Plaintiff,

13         v.                                      FINDINGS AND RECOMMENDATIONS

14   JERRY BROWN, GOVERNOR OF
     CALIFORNIA, et al.,
15
                   Defendants.
16

17
           Plaintiff is proceeding in this action pro se and in forma pauperis.  This proceeding was
18
     referred to this court by Local Rule 302(c)(21).  On February 3, 2015, the court permitted
19
     plaintiff's Section 1983 claim against the Governor to proceed.  ECF No. 3.  Plaintiff alleges that
20
     California's version of Megan's Law, as amended in 2004, Cal. Penal Code § 290.46, violates his
21
     rights under the Ex Post Fact Clause of the U.S. Constitution.
22
           The Governor has now moved to dismiss on sovereign immunity grounds, asserting that
23
     the face of the complaint shows that he is immune from suit and therefore, he argues, this court
24
     lacks subject matter jurisdiction over the case against him.  In the alternative, the Governor moves
25
     to dismiss the complaint for failure to state a claim.
26
                              I. SUBJECT MATTER JURISDICTION
27
           The Governor argues that this court lacks subject matter jurisdiction over the case against
28

                                                    1

1  him because he enjoys Eleventh Amendment sovereign immunity.  Defendant's Motion for

2  Summary Judgment ("Defendant's Motion") (ECF No. 9 at 10-13.  However, "[t]he [Eleventh]

3  Amendment . . . enacts a sovereign immunity from suit, rather than a nonwaivable limit on the

4  federal judiciary's subject matter jurisdiction."  Idaho v. Couer d'Alene Tribe, 521 U.S. 261, 267

5  (1997); Hill v. Blind Industries and Services of Maryland,179 F.3d 754, 760 (9th Cir. 1999), as

6  amended, 201 F.3d 1186 (2000) ("the Eleventh Amendment is not a true limitation upon the

7  court's subject matter jurisdiction, but rather a personal privilege that a state may waive").

8  Accordingly, the Governor's motion will be considered under the standards applicable to motions

9  to dismiss under Fed. R. Civ. P. 12(b)(6).  See ASARCO, LLC v. Union Pacific R. Co., 765 F.3d

10  999, 1004 (9th Cir. 2014) ("Dismissal under Rule 12(b)(6) on the basis of an affirmative defense

11  is proper only if the defendant shows some obvious bar to securing relief on the face of the

12  complaint").

13  II.  DISMISSAL STANDARD UNDER RULE 12(b)(6)

14  "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

15  claim upon which relief can be granted tests the legal sufficiency of a claim."  Conservation Force

16  v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks omitted), cert. denied,

17  132 S. Ct. 1762 (2012).  "Dismissal can be based on the lack of a cognizable legal theory or the

18  absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police

19  Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

20  For a complaint to be dismissed because the allegations give rise to an affirmative

21  defense, the allegations of the complaint must "'suffice to establish' the defense."  Sams v.

22  Yahoo! Inc., 713 F.3d 1175, 1179 (9th Cir. 2013) (quoting Jones v. Bock, 549 U.S. 199, 215

23  (2007)).  Those allegations must show some "obvious" and "insuperable" bar to securing relief.

24  ASARCO, 765 F.3d at 1004 (citing 5B Charles Alan Wright et al., Federal Practice and

25  Procedure § 1357 (3d ed.1998) ("a dismissal under Rule 12(b)(6) is likely to be granted by the

26  district court only in the relatively unusual case in which the plaintiff includes allegations that

27  show on the face of the complaint that there is some insuperable bar to securing relief . . .")).

28  However, "[i]f, from the allegations of the complaint as well as any judicially noticeable

2

1    materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is

2    improper."  Id. (citing Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir.1984) (per curiam)).

3          In reviewing a challenged complaint under Rule 12(b)(6), the court "must accept as true

4    all of the factual allegations contained in the complaint,"  Erickson v. Pardus, 551 U.S. 89, 94

5    (2007) (citing Twombly, 550 U.S. at 555-56), construe those allegations in the light most

6    favorable to the plaintiff, Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954,

7    960 (9th Cir. 2010) (citing Twombly), and resolve all doubts in the plaintiff's favor.  Hebbe v.

8    Pliler, 627 F.3d 338, 340 (9th Cir. 2010) (citing Hospital Bldg. Co. v. Trustees of Rex Hospital,

9    425 U.S. 738 (1976)).  The court need not accept as true, legal conclusions "cast in the form of

10   factual allegations."  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

11                                III.  THE COMPLAINT

12         The complaint alleges that on November 4, 2000, plaintiff was convicted of sex crimes

13   that occurred in December 1998 and August 1999.  Complaint (ECF No. 1) at 12.  It further

14   alleges that plaintiff became obligated to "register with local law enforcement and be placed on a

15   classification & notification Internet data base per 'Megan's Law' which was enacted in

16   November of 2004."  Id.  The complaint alleges that because these obligations arose after the

17   commission of the crimes, after the charges were brought, and after the conviction was obtained,

18   the statute imposing them violates the Ex Post Facto Clause of the U.S. Constitution.

19         In his brief opposing the Governor's motion to dismiss, however, plaintiff clarifies that he

20   is only challenging, on ex post facto grounds, that portion of the law that "requires Plaintiff to be

21   placed on an internet data base web site," the obligation that was enacted in 2004.  Plaintiff's

22   Memorandum of Points and Authorities in Opposition to Motion To Dismiss ("Plaintiff's

23   Opposition") (ECF No. 15) at 4.

24                                   IV.  ANALYSIS

25         A. Eleventh Amendment Immunity

26              1.  The proper defendant

27         The Eleventh Amendment bars suits against a state, absent the state's affirmative waiver

28   of its immunity or congressional abrogation of that immunity.  Papasan v. Allain, 478 U.S. 265,

3

276-77 (1986) (citing <u>Pennhurst v. Halderman</u>, 465 U.S. 89 (1984)).  A suit that seeks to enjoin

enforcement of a statute, and names the Governor as a defendant, is a suit against the State, unless

the governor has "some connection with the enforcement" of the statute:

> In making an officer of the state a party defendant in a suit to enjoin
> the enforcement of an act alleged to be unconstitutional, it is plain
> that such officer must have some connection with the enforcement
> of the act, or else it is merely making him a party as a representative
> of the state, and thereby attempting to make the state a party.

<u>Ex parte Young</u>, 209 U.S. 123, 157 (1908); <u>Los Angeles County Bar Ass'n v. Eu</u>, 979 F.2d 697,

704 (9th Cir. 1992) ("[t]his connection must be fairly direct; a generalized duty to enforce state

law or general supervisory power over the persons responsible for enforcing the challenged

provision will not subject an official to suit").  However, a suit seeking only to enjoin the proper

state official from enforcing an unconstitutional state statute, faces no Eleventh Amendment

sovereign immunity bar.[1]  <u>National Audubon Society, Inc. v. Davis</u>, 307 F.3d 835, 847 (9th Cir.)

(9th Cir.), <u>as amended</u>, 312 F.3d 416 (2002) ("[u]nder the principle of <u>Ex Parte Young</u>, private

individuals may sue state officials for prospective relief against ongoing violations of federal

law").

     The Governor argues that he must be dismissed because "the Complaint alleges no

connection between the Governor and the enforcement of Megan's Law."  Defendant's Motion

at 12.  Since sovereign immunity is an affirmative defense, and not a matter of subject matter

jurisdiction, this normally would not be sufficient to obtain a dismissal.  However, in this case,

the critical underlying facts may be discerned from the statute itself and other, binding authority,

discussing the Governor's role in law enforcement.  The challenged statute does not itself grant

the Governor any authority, nor does it authorize or require him to place names on the website,

nor to maintain the website, nor does it authorize the Governor to remove names from the

website.  <u>See</u> Cal. Penal Code § 290.46.

     Rather, the statute requires the California Department of Justice to make the sex offender

---

[1]  At oral argument on this motion, the court asked the Governor's counsel to identify who is the
official who has the ability to grant the requested relief, namely, removal of plaintiff's name from
the website.  The Governor declined to name any official, inasmuch as no other official has yet
been named as a defendant in this case, or served.  ECF No. 18.

information available on a publicly available website, and to "update the Internet Web site on an ongoing basis." Id. § 290.46(a).  The Attorney General of California is the head of the Department of Justice.  Cal. Gov. Code § 12510.  The statute also specifically names the Attorney General (along with district attorneys and city attorneys) as the person to enforce certain other sections of the law, and to interact with the public and others regarding the use of the publicly available information put on the website.  See Cal. Penal Code § 290.46(*l*)(4)(B), (o).

Because the statute does not create any connection between the *Governor* and the statute, and no other connection is alleged in the complaint, the court concludes from the face of complaint that plaintiff is suing the Governor based upon the Governor's general supervisory authority as Governor, or possibly whatever general duty he may have to enforce California law.  See Cal. Gov. Code §§ 12010 ("The Governor shall supervise the official conduct of all executive and ministerial officers"), 12011 ("The Governor shall see that all offices are filled and their duties performed").  However, this is an insufficient connection to the enforcement of this law to overcome the bar of sovereign immunity.  See Association des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 943 (9th Cir. 2013) ("Governor Brown is entitled to Eleventh Amendment immunity because his only connection to § 25982 [banning the sale of foie gras] is his general duty to enforce California law"), cert. denied, 135 S. Ct. 398 (2014).

Accordingly, the Governor will be dismissed from this lawsuit on the basis of his sovereign immunity defense.  However, plaintiff will be granted an opportunity to amend his complaint to name a proper defendant.  Since plaintiff will have the opportunity to so amend his complaint, the court will go on to address the Governor's other sovereign immunity argument, since it will similarly apply to whichever state official plaintiff names as a defendant.

2.  Threat of enforcement

The Governor argues that in order to get past Eleventh Amendment sovereign immunity, there must be "a threat of enforcement," relying upon Long v. Van de Kamp, 961 F.2d 151, 152 (9th Cir. 1992) (per curiam).  Defendant's Motion at 12.  However, no threat of enforcement is required.  After discussing Long, the Ninth Circuit in National Audubon Society expressly rejected California's argument that "the Ex Parte Young exception 'require[s] a genuine threat of

enforcement by a state official before a federal court' can hear a party's claims." <u>National Audubon Society</u>, 307 F.3d at 846. The Ninth Circuit there explained that <u>Long</u> (and similar cases):

> are concerned with plaintiffs circumventing the Eleventh Amendment under <u>Ex Parte Young</u> simply by suing any state executive official. That is, they are concerned with the question of "who" rather than "when." . . . We decline to read additional "ripeness" or "imminence" requirements into the <u>Ex Parte Young</u> exception to Eleventh Amendment immunity in actions for declaratory relief beyond those already imposed by a general Article III and prudential ripeness analysis. The Article III and prudential ripeness requirements . . . are tailored to address problems occasioned by an unripe controversy. There is thus no need to strain <u>Ex Parte Young</u> doctrine to serve that purpose.

<u>Id.</u> at 846-47. The court concludes that in the Ninth Circuit, no "threat of enforcement" is required to overcome Eleventh Amendment sovereign immunity.

### B. Constitutionality of Megan's Law

Although the court will dismiss the Governor from this lawsuit, the question still remains whether granting plaintiff leave to amend by substituting a different defendant should be granted. If plaintiff's lawsuit is plainly hopeless, the court will not waste scarce judicial resources by permitting plaintiff to amend, and then separately addressing yet another motion to dismiss, this time on the merits. <u>See, e.g.</u>, <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (leave to amend shall be freely granted "in the absence of any apparent or declared reason," including "futility of amendment"). Accordingly, the court considers the facial sufficiency of plaintiff's claim.

#### 1. Chronology

At the time plaintiff committed the sex offenses for which he was convicted, Megan's Law already provided for the registration of certain sex offenders. Cal. Penal Code § 290; <u>Hatton v. Bonner</u>, 356 F.3d 955, 959 (9th Cir. 2004) (noting that "California's sex-offender registration statute requires persons convicted of various sex offenses to register with local law enforcement authorities," and discussing the offenses to which the requirement applied in 1983, 1991 and 1993). The law also provided for the collection and public disclosure of information regarding "high risk" sex offenders. <u>See</u> <u>Wright v. Superior Court</u>, 15 Cal. 4th 521, 529 (1997) (the law authorizes "law enforcement agencies to disclose information, including street addresses, about

1    certain high risk sex offenders as well as advise the public of their presence"); Doe v. California

2    Dept. of Justice, 173 Cal. App. 4th 1095, 1102 (4th Dist. 2009) (even before the internet database

3    requirement was enacted in 2004, California's Megan's Law provided "for the collection and

4    public disclosure of information regarding sex offenders required to register under section 290").

5        In 2004, California amended Megan's Law by enacting Cal. Penal Code § 290.46.  That

6    provision requires the California Department of Justice to "make available to the public, via an

7    Internet Web site," information about convicted offenders who are required to register under

8    Section 290.  Cal. Pen. Code § 290.46(a); Doe, 173 Cal. App. 4th at 1102 ("In 2004 the

9    Legislature enacted section 290.46, which requires the Department to maintain an Internet Web

10   site that includes information on persons convicted of specified sex offenses, such as the

11   offender's name, address, aliases, photograph, physical description, date of birth, criminal history

12   and other information the Department deems relevant").  It is this amendment that plaintiff

13   alleges violates his ex post facto rights.

14       Defendant moves to dismiss, arguing that Megan's Law, including the broad publication

15   of offender information on the Internet, is "nonpunitive."  Defendant's Motion at 13; Defendant's

16   Reply Brief in Support of Motion To Dismiss Complaint ("Defendant's Reply") (ECF No. 16)

17   at 7-8.

18           2.  Ex post facto law

19       In order to determine whether § 290.46 constitutes "retroactive punishment forbidden by

20   the Ex Post Facto Clause," the court must undertake the "two-step analysis" prescribed by Smith

21   v. Doe, 538 U.S. 84 (2003).  Hatton, 356 F.3d at 961.

22       First, the court "must decide whether the intent of the California legislature" in enacting

23   § 290.46 "was to impose punishment on sex offenders."  Hatton, 356 F.3d at 961; American Civil

24   Liberties Union of Nevada v. Masto, 670 F.3d 1046, 1053 (9th Cir. 2012) ("The first step of the

25   inquiry requires courts to determine whether the legislature intended to impose a criminal

26   punishment or whether its intent was to enact a nonpunitive regulatory scheme").  If the answer is

27   "yes," the court's analysis ends "because retroactive application of the statute would constitute an

28   ex post facto violation."  Hatton, 356 F.3d at 961; Masto, 670 F.3d at 1053 (if there is a punitive

1    intent, "that is the end of the inquiry").

2        If, however, the intent of the California legislature was to enact "a nonpunitive and civil

3    regulatory regime," the court moves to the second step of the analysis.  Id. at 962.  There, the

4    court must decide whether § 290.46 "is 'so punitive either in purpose or effect as to negate [the

5    State's] intention to deem it civil.'"  Id. (quoting Smith, 538 U.S. at 92).  Under this second step,

6    "'only the clearest proof will suffice to override legislative intent and transform what has been

7    denominated a civil remedy into a criminal penalty.'"  Id. (quoting Smith, 538 U.S. at 92).

8                            a.  First step: legislative intent

9        In support of his argument that the California legislature's intent in enacting Cal. Penal

10   Code § 290.46 was "nonpunitive," the Governor cites (1) Smith, a Supreme Court case holding

11   that Alaska's legislature, in enacting its own version of Megan's Law, had no punitive intent; (2)

12   Ninth Circuit cases addressing the legislative intent of provisions of Megan's law other than the

13   challenged provision, Section 290.46; and (3) California cases, one of which addresses the

14   legislative intent behind Section 290.46.

15                              i.  Smith v. Doe

16       In 2003, the Supreme Court found that Alaska's version of Megan's Law did not violate

17   the Ex Post Facto clause when applied retroactively.  Smith, 538 U.S. 84.  The Court examined

18   several facts relating to the enactment, implementation and enforcement of Alaska's version of

19   Megan's Law, and concluded in the first part of the ex post facto inquiry, that the Alaska

20   legislature's intent "was to create a civil, *nonpunitive* regime."  Id. at 96 (emphasis added).  In

21   reaching this conclusion, the Court specifically examined (1) the statutory text for evidence of the

22   "objective of the law," (2) other "formal attributes" of the legislative enactment, including "the

23   manner of its codification," (3) the "procedural mechanisms to implement the Act," and (4) the

24   determination of which agency would be vested with the power to implement the law.  Smith, 538

25   U.S. at 93-96.  Only after examining and fleshing out these factors did the Court reach its

26   conclusion that the law was intended to be "nonpunitive."  Id.

27       The Governor appears to argue that the intent of the California legislature was also

28   nonpunitive because the law that resulted is substantively identical to that of Alaska's.  It does

1   appear that in their implementation, the statutes are quite similar.[2]  However, the Governor offers

2   no explanation for why similar looking legislation must have resulted from identical non-punitive

3   intents, and the court knows of none.

4                                  ii.  Ninth Circuit cases

5          The Governor further argues that "the Ninth Circuit has repeatedly held that California's

6   scheme is nonpunitive and does not violate the Ex Post Facto Clause," citing Hatton, 356 F.3d

7   at 963-64, Doe v. Harris, 640 F.3d 972, 975-76 (9th Cir. 2011), and United States v. Hardeman,

8   704 F.3d 1266, 1268 (9th Cir. 2013).  Defendant's Motion at 9; Defendant's Reply at 8.  This

9   argument is entirely unpersuasive.

10         In Hatton, a habeas corpus case decided under the Antiterrorism and Effective Death

11  Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), the Ninth Circuit addressed the

12  petitioner's challenge to Cal. Penal Code § 290, which retroactively required that he register as a

13  sex offender.  See Hatton, 356 F.3d at 959-61.  The case did not address Section 290.46, the

14  statute challenged here, or the broad public dissemination regime – via the Internet – that it

15  imposed.

16         In addition, Hatton followed the prescription set forth in Doe, and closely examined the

17  legislative history, the language of the statute, pronouncements of the California Supreme Court,

18  and the codification structure of the statute.  Each of these factors applied to Section 290, the

19  requirement to register with local law enforcement, not to Section 290.46, the requirement that

20  the offender's information be posted publicly on the Internet.  The Governor has not addressed

21  how those factors apply to Section 290.46.  Nor does he show that the Section 290.46

22  _____

23  [2]  Both states make similar information about sex offenders available to the public by posting the
    information on a website.  Although the Alaska statute does not require sex offender information
24  to be posted on an Internet website, see Alaska Stat. § 18.65.087, "Alaska has chosen to make
    most of the nonconfidential information available on the Internet."  Smith, 538 U.S. at 91.  Both
25  make similar information about the sex offender publicly available.  The principal differences are:
    Alaska discloses the offender's "place of employment," while California does not; Alaska
26  discloses the offender's address, while California discloses it only for some offenses, and only
    discloses the "community of residence and ZIP code" for the rest; and California requires
27  disclosure of the offender's motor vehicles and his "SARATSO" "risk" level, while Alaska does
    not.  Compare Alaska Stat. § 18.65.087(b), with Cal. Penal Code § 290.46(b)(1), (c)(1)
28  and (d)(1).

                                              9

1  requirements are sufficiently similar to the Section 290 requirements that it would be plausible to

2  find that the legislative intent for one carries over to the other.

3          In any event, as noted, Hatton was reviewing a state court denial of a habeas corpus

4  petition under the deferential standard imposed by AEDPA.  In doing so, it found that (1) "the

5  state court reasonably concluded that the legislature's intent was not punitive," and (2) the state

6  court did not err, under AEDPA standards, in finding that the statute was not "'so punitive either

7  in purpose or effect as to negate [the State's] intention to deem it civil.'"  Id. at 961-67 (quoting

8  Smith, 123 S. Ct. at 1147).  This case is not a deferential AEDPA review of a state court decision

9  denying habeas relief, and Hatton therefore does not compel a finding that Section 290.46 was

10 enacted with a non-punitive intent.

11         The Governor next cites Doe v. Harris, 640 F.3d 972, 975-76 (9th Cir. 2011).  However,

12 that case is about whether the application of Megan's Law violated the offender's plea agreement.

13 It does not contain a holding relating to the ex post facto effect of any provision of Megan's Law.

14 Indeed, it contains no holding of any kind, as the decision only referred a question of contract

15 interpretation to the California Supreme Court.  Doe, 640 F.3d at 973.  Its only reference to the

16 Ex Post Facto clause is its mention of Hatton and Smith, discussed above, in a footnote.  See id. at

17 975 n.3.

18         Finally, the Governor cites United States v. Hardeman, 704 F.3d 1266, 1267 (9th Cir.

19 2013).  In that case, the defendant challenged a federal law, 18 U.S.C. § 2260, that "criminalizes

20 the commission of certain federal offenses involving a minor while the perpetrator is under a legal

21 duty to register as a sex offender."  Once again, the case is not about the ex post facto effect of

22 Megan's Law, although, like Doe, it does mention Hatton and Smith.  However, if anything,

23 Hardeman tends to undercut the Governor's argument, because it states that "[t]he *reason* why

24 those laws [Alaska's Megan's law, and Section 290], standing alone, do not violate ex post facto

25 principles is that registration itself is not considered punitive."  Id. at 1268 (emphasis in text).

26 Here, plaintiff is not challenging the registration provisions of Megan's Law, Section 290, but

27 rather the broad publication of his personal information on the Internet required by

28 Section 290.46.

iii.  <u>State cases</u>

The Governor argues that state court cases establish that the California Legislature had a non-punitive intent in enacting Section 290.46, citing <u>People v. Castellanos</u>, 21 Cal. 4th 785, 799 (1999), and <u>Doe</u>, 173 Cal. App. 4th at 1114-15.  This argument fails.  First, <u>Castellanos</u> was decided five years before Section 290.46 was enacted, and does not address the punitive or non-punitive intent of the legislature in enacting that legislation.

Second, even if <u>Castellanos</u> did address that Section – and <u>Doe</u> does address an amendment to Section 290.46 – the question of whether a state enactment has a non-punitive intent is a <u>federal</u> question.  "In applying the ex post facto prohibition of the Federal Constitution to state laws, a federal court accepts the meaning ascribed to them by the highest court of the state." <u>Murtishaw v. Woodford</u>, 255 F.3d 926, 964-65 (9th Cir. 2001), <u>cert. denied</u>, 535 U.S. 935 (2002).  But when its meaning is thus established, the issue of whether there has been an ex post facto violation is a constitutional question to be determined by the federal court. <u>Id.</u> at 965.

The Governor's mere citation to the state court decisions is therefore ineffective.  If the Governor believes those decisions should be followed because they are persuasive on the question, then he is free to argue that point.  Thus far, he has not done so.

b.  <u>Second step: practical effect</u>

Even if the court were to find that the California legislature had no intent to punish, it must then consider whether § 290.46 "is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." <u>Smith</u>, 538 U.S. at 84 (internal quotation marks omitted).  In analyzing the effects of Alaska's version of Megan's law, the Supreme Court referred "to the seven factors noted in <u>Kennedy v. Mendoza-Martinez</u>, 372 U.S. 144, 168 69 (1963)," which are "useful guideposts" in ex post facto analysis.  <u>Smith</u>, 538 U.S. at 97.  Of those seven:

> [t]he factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: [1] has been regarded in our history and traditions as a punishment; [2] imposes an affirmative disability or restraint; [3] promotes the traditional aims of punishment; [4] has a rational connection to a nonpunitive purpose; or is [5] excessive with respect to this purpose.

<u>Id.</u> at 97.

1       The Governor says nothing about whether the statute's effects are so punitive in nature as

2   to negate the legislature's intent to make the law civil.  Nor does he address any of the factors

3   used to make this determination.  The Supreme Court analyzed these factors at some length

4   before concluding that "respondents cannot show . . . that the effects of the law negate Alaska's

5   intention to establish a civil regulatory scheme."  Id. at 97 105.  Similarly, in Hatton, the Ninth

6   Circuit analyzed, at length, all seven factors set out in Kennedy.  Hatton, 356 F.3d at 963.  Those

7   factors are:

8   
9           (1) whether the sanction involves an affirmative disability or
    restraint; (2) whether the sanction has historically been regarded as
    a punishment; (3) whether the sanction comes into play only on a
10  finding of scienter; (4) whether the sanction's operation will
    promote the traditional aims of punishment-retribution and
    deterrence; (5) whether the behavior to which the sanction applies
11  is already a crime; (6) whether an alternative purpose to which the
    sanction rationally may be connected is assignable to it; and (7)
12  whether the sanction appears excessive in relation to the alternative
    purpose assigned.

13  

14  Id.  The Governor offers no similar analysis of the effects of Section 290.46.

15      For all the reasons explained above, the Governor has not demonstrated that Section

16  290.46 is non-punitive as a matter of law, or that plaintiff's claims are otherwise facially

17  insufficient to proceed.  Accordingly, the court cannot conclude at this stage in the proceedings

18  that permitting plaintiff to amend his complaint would be futile.

19                        V. CONCLUSION

20      For the reasons stated above, IT IS HEREBY RECOMMENDED that:

21      1.  The Governor's motion to dismiss (ECF No. 9), be GRANTED, but only to the extent

22  that the Governor enjoys sovereign immunity from this suit;

23      2.  Plaintiff be granted 30 days from the date of this order to amend his complaint by

24  deleting the Governor as a defendant, and substituting a proper defendant; and

25      3.  These findings and recommendations are submitted to the United States District Judge

26  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 21 days after

27  being served with these findings and recommendations, any party may file written objections with

28  the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document

should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any

response to the objections shall be filed with the court and served on all parties within fourteen

days after service of the objections.  Local Rule 304(d).  Failure to file objections within the

specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158

F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: June 30, 2015

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

13