UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK L. MITCHELL,<br><br>Plaintiff,<br><br>v.<br><br>KAMALA D. HARRIS, ATTORNEY GENERAL OF CALIFORNIA; and JAMES C. SANCHEZ, CITY ATTORNEY OF SACRAMENTO,<br><br>Defendants. | No. 2:14-cv-2993 MCE AC (PS)<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is proceeding in this action pro se and in forma pauperis. This proceeding was referred to this court by Local Rule 302(c)(21). This action is proceeding on plaintiff's First Amended Complaint ("Complaint") (ECF No. 24).

I. BACKGROUND

Plaintiff was convicted of sex offenses on November 4, 2000. First Amended Complaint ("Complaint") (ECF No. 24) at 9. Four years later, in November 2004, California enacted Cal. Penal Code § 290.46 ("Megan's Law"). Section 290.46 requires the California Department of Justice to make available on an Internet Web site, certain information about persons who are required to register as sex offenders. Cal. Penal Code § ("Section") 290.46(a)(1), (b)(1), (c)(1), (d)(1); see Doe v. Brown, 177 Cal. App. 4th 408 (2009) ("pursuant to provisions contained in section 290.46 (Megan's Law), the Department of Justice (the Department) is required to make

1

available to the public on the Internet, "information concerning persons who are required to register" pursuant to the Sex Offender Registration Act"). Plaintiff's Complaint challenges the constitutionality of Section 290.46. The Complaint alleges that the statute violates his U.S. constitutional rights under the Ex Post Facto Clause, the Due Process Clause and the Sixth Amendment.

In his Opposition to the Motion to Dismiss ("Opposition") (ECF No. 34), plaintiff challenges only "the broad publication of his personal information" required by Section 290.46. He "is not challenging the registration requirements provision" of the law. Opposition at 6. In addition, plaintiff's Opposition argues only that the law violates his ex post facto rights. His Opposition contains no opposition to or argument against the dismissal of his Due Process Clause or Sixth Amendment claims. Accordingly, the motion to dismiss the Due Process and Sixth Amendment claims will be granted.

## II. PROCEDURAL BACKGROUND

Plaintiff's original complaint was dismissed because it named the Governor as defendant, and the Governor was immune from suit. ECF No. 23. However, plaintiff was granted leave to amend so that he could substitute in the correct defendants, since the Governor failed to show that such amendment would be futile. Id.

Plaintiff has now named California's Attorney General and Sacramento's City Attorney as defendants. Complaint ¶ 4. Defendants move to dismiss on the grounds that the Complaint fails to state a claim. Relying on Smith v. Doe, 538 U.S. 84 (2003), defendants argue that plaintiff cannot show that (1) the California legislature intended to enact Section 290.46 as a punitive measure, or (2) the challenged section is punitive in effect.[1]

////
////

---

[1] Defendants also rely upon, and ask the court to take judicial notice of, the legislative history of Section 290.46. ECF No. 31 at 12 n.6 (citing Louis v. McCormick & Schmick Restaurant Corp., 460 F. Supp. 2d 1153, 1155 & n.4 (C.D. Cal. 2006)). Because this motion can be decided without reference to the legislative history, the request will be denied as moot.

2

## III. DISMISSAL STANDARDS

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the Complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff, and resolve all doubts in the plaintiffs' favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 131 S. Ct. 3055 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). However, the court need not accept as true, legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may

only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

## IV. CHRONOLOGY

At the time plaintiff committed the offenses for which he was convicted, California law already provided for the registration of certain sex offenders. Cal. Penal Code § 290; Hatton v. Bonner, 356 F.3d 955, 959 (9th Cir. 2004) (noting that "California's sex-offender registration statute requires persons convicted of various sex offenses to register with local law enforcement authorities," and discussing the offenses to which the law applied in 1983, 1991 and 1993). The law also provided for the collection and public disclosure of information regarding "high risk" sex offenders. See Wright v. Superior Court, 15 Cal. 4th 521, 529 (1997) (the law authorizes "law enforcement agencies to disclose information, including street addresses, about certain high risk sex offenders as well as advise the public of their presence"); Doe v. California Dept. of Justice, 173 Cal. App. 4th 1095, 1102 (4th Dist. 2009) (even before the internet database requirement was enacted in 2004, California's Megan's Law provided "for the collection and public disclosure of information regarding sex offenders required to register under section 290").

In 2004, California enacted Cal. Penal Code § 290.46. See Doe v. Harris, 57 Cal. 4th 64, 66 (2013) (the Legislature "adopted 'Megan's Law' (§ 290.46, added by Stats. 2004, ch. 745, § 1, pp. 5798–5803), which among other things, provides a means by which the public can obtain the names, addresses, and photographs of the state's registered sex offenders"). As noted, that provision requires the California Department of Justice to "make available to the public, via an Internet Web site," information about convicted offenders who are required to register under Section 290. Cal. Pen. Code § 290.46(a). It is this provision that plaintiff alleges violates his ex post facto rights.

////

////

## V.  ANALYSIS

"A change in law violates the Ex Post Facto Clause of the Federal Constitution when it 'inflicts a greater punishment[] than the law annexed to the crime, when committed.'" Gilman v. Brown, __ F.3d __, Slip Op. at 14 (9th Cir. February 22, 2016) (quoting Peugh v. United States, 133 S. Ct. 2072, 2078 (2013)).  In order to determine whether § 290.46 constitutes "retroactive punishment forbidden by the Ex Post Facto Clause," the court must undertake the "two-step analysis" prescribed by Smith.  Hatton, 356 F.3d at 961.

First, the court "must decide whether the intent of the California legislature" in enacting Section 290.46 "was to impose punishment on sex offenders."  Hatton, 356 F.3d at 961.  If the answer is "yes," the court's analysis ends "because retroactive application of the statute would constitute an ex post facto violation."  Id.  Second, if the intent of the California legislature was to enact "a nonpunitive and civil regulatory regime," the court moves to the next step of the analysis.  Id.  There, the court must decide whether Section 290.46 "is 'so punitive either in purpose or effect as to negate [the State's] intention to deem it civil.'"  Id.  Under this second step, "'only the clearest *proof* will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.'"  Id. (emphasis added).

### A.  First step: legislative intent

Defendants argue that the Supreme Court "has reviewed sex offender registration and notification schemes like California's Megan's Law and found no Ex Post Facto Clause violation," citing Smith.  ECF No. 31 at 10.

In Smith, the plaintiff challenged a nearly identical sex-offender Internet notification program.  The Alaska statute in Smith "requires convicted sex offenders to register with law enforcement authorities, and much of the information is made public."  Smith, 538 U.S. at 89.  Although the statute in Smith did not specify how the information would be made public, "Alaska has chosen to make most of the nonconfidential information available on the Internet."  Id. at 91.[2]

---

[2] California's disclosures vary somewhat depending upon the conviction offense.  The Complaint does not disclose plaintiff's conviction offense, and so it is not known exactly what level of disclosure applies to him.  However, looking at the greatest level of disclosure that might be (continued…)

1    Determining whether the statute is civil or criminal "'is first of all a question of statutory construction.'" Id. at 92 (quoting Kansas v. Hendricks, 521 U.S. 346, 361 (1997)).  The court must "consider the statute's text and its structure to determine the legislative objective." Id.  The court notes that Smith was decided on summary judgment.  However, Smith establishes that this initial inquiry can be determined from the "text and . . . structure of the statute," in which case this step can be determined on a motion to dismiss.  See Hendricks, 521 U.S. at 361 ("Nothing on the *face of the statute* suggests that the legislature sought to create anything other than a civil commitment scheme designed to protect the public from harm") (emphasis added).

### 1. Objective as expressed in the statutory text

"The courts 'must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.'" Smith, 538 U.S. at 93 (quoting Hudson v. United States, 522 U.S. 93, 99 (1997)).  A review of the Hendricks and Smith cases is instructive in making this determination, and leads to the conclusion that the intent of the statute in this case, as shown on the face of the statute, was not punitive.

In 1984, the defendant in Hendricks – who had "a chilling history of repeated child sexual molestation and abuse, beginning in 1955," who refused treatment, and who always re-offended when not incarcerated – was tried and convicted of "taking 'indecent liberties' with two 13-year-old boys." Hendricks, 521 U.S. at 353 55.  Ten years later – in 1994 – as Hendricks was approaching his conditional release date, Kansas enacted a law permitting sexually violent predators, such as Hendricks, to be civilly committed after their criminal prison terms were over. Hendricks, 521 U.S. at 350.  The state then invoked the new law and had Hendricks civilly

---

applicable to plaintiff, both the Alaska and the California statutes disclose the following information about the offender on the website: names and aliases; address; photograph; physical description; date of birth; date of conviction (the year, for California); criminal history (specifics of the conviction offense, for Alaska).  See Cal. Penal Code § 290.46; Smith, 528 U.S. at 91. Alaska separately discloses: place of employment; description, license and identification numbers of motor vehicles; and a statement on whether the offender is in compliance with the update requirements or cannot be located.  See Smith, 538 U.S. at 91.  California separately discloses: year of release; whether separately incarcerated; and "any other information that the Department of Justice deems relevant." See Cal. Penal Code § 290.46.

1  committed. Hendricks, 521 U.S. at 355-56.

2  The Court first looked to the text and structure of the civil commitment statute. The Court

3  reasoned:

> Here, Kansas' objective to create a civil proceeding is evidenced by its placement of the Act within the Kansas probate code, instead of the criminal code, Kan. Stat. Ann., Article 29 (1994) ("Care and Treatment for Mentally Ill Persons"), as well as its description of the Act as creating a "civil commitment procedure," § 59–29a01 (emphasis added). Nothing on the face of the statute suggests that the legislature sought to create anything other than a civil commitment scheme designed to protect the public from harm.

Hendricks, 521 U.S. at 361. Having found nothing "on the face of the statute" indicating it was

punitive, the Court stated:

> Although we recognize that a "civil label is not always dispositive," [Allen v. Illinois, 478 U.S. 364, 369 (1986)], we will reject the legislature's manifest intent only where a party challenging the statute provides "the clearest proof" that "the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention" to deem it "civil," United States v. Ward, 448 U.S. 242, 248 49 (1980).

Hendricks, 521 U.S. at 361. The Court then found that nothing in the statute undermined Kansas'

stated intent of creating a civil procedure, rather than a means of "retribution or deterrence."

Specifically, the Kansas law "does not make a criminal conviction a prerequisite for

commitment;" no "scienter" is required for civil commitment; and there was no indication that

retribution was intended.

In this case, the statute itself states, in explaining why the statute should take effect

immediately:

> In order to ensure that members of the public have adequate information about the identities and locations of sex offenders who may put them and their families at risk, it is necessary that this act take effect immediately.

2004 Cal. Legis. Serv., Ch. 745 § 5 (A.B. 488) (West). This statement of intent satisfies the first

Smith factor. The Alaska statute under review in Smith similarly was enacted after the legislature

"determined that 'release of certain information about sex offenders to public agencies and the

general public will assist in protecting the public safety.'" Smith, 538 U.S. at 93. Here also,

7

there is nothing on the face of the statute that indicates that retribution is intended. In addition, the face of the statute only requires that information be disseminated; there is nothing to otherwise indicate an intent to punish.[3]

### 2. Other factors

Some of the other factors cited by Hendricks however, are not present here. The legislature placed the Internet disclosure section in the Penal Code, which might indicate an intention to make it penal in nature. But in fact, "[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one." Smith, 538 U.S. at 94. Also, in this case, a criminal conviction *is* a prerequisite for inclusion in the website disclosure. However, the Court in Smith made no mention of this factor even though a criminal conviction was a prerequisite in that case, too. The court concludes that the absence of these factors does not indicate that the intention of the statute was punitive.

### B. Second Step: Practical effect

The court must next consider whether § 290.46 "is 'so punitive either in purpose or effect as to negate [the State's] intention to deem it civil.'" However, where, as here, the face of the statute shows the absence of a punitive intent, the court can "reject the legislature's manifest intent" only where:

> a party challenging the statute provides "the clearest proof" that "the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention" to deem it "civil" . . ..

Hendricks, 521 U.S. at 361. Thus, in order for plaintiff to prevail ultimately, he must produce evidence showing a punitive effect or purpose.

In analyzing the effects of Alaska's version of Megan's law, the Smith Court referred "to the factors noted in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168 69 (1963)," which are "useful guideposts" in the ex post facto analysis. Smith, 538 U.S. at 97. In the context of an ex

---

[3] The court notes that this provision does not impose any duties or restrictions on plaintiff, and that plaintiff does not here challenge any portion of California's laws imposing duties or restrictions, such as the requirement to register, or residency restrictions. See Cal. Penal Code §§ 290 (registration), 3003.5 (residency).

post facto challenge to a law requiring Internet disclosure of sex offender information:

> [t]he factors most relevant to [the court's] . . . analysis are whether, in its necessary operation, the regulatory scheme: [1] has been regarded in our history and traditions as a punishment; [2] imposes an affirmative disability or restraint; [3] promotes the traditional aims of punishment; [4] has a rational connection to a nonpunitive purpose; or is [5] excessive with respect to this purpose.

Id. at 97.

Regarding the first factor, the Court analyzed arguably applicable historical precedents – Colonial shaming, the pillory, physical branding, banishment – and found that the Internet publication of sex offender information, was not punitive when viewed in its historical context. Id. at 97-99.[4]

On the second factor – "affirmative disability or restraint" – the Court rejected the "conjecture" that "'the procedures employed under the Alaska statute are likely to make [respondents] completely unemployable' because 'employers will not want to risk loss of business when the public learns that they have hired sex offenders.'" Id. at 100 (emphasis in text). The Court acknowledged that "the public availability of the information may have a lasting and painful impact on the convicted sex offender," but it concluded that "these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record." Id. at 101. In rejecting the "conjecture" of disability or restraint, the court stated that "[t]he record in this case contains no evidence that the Act has led to substantial occupational or housing disadvantages for former sex offenders that would not have otherwise occurred through the use of routine background checks by employers and landlords." Id. (emphasis added).

On the third factor, the Court has noted that the traditional aims of "punishment" are retribution and deterrence. See, e.g., Hendricks, 521 U.S. at 361 62 (referring to "the two primary objectives of criminal punishment: retribution or deterrence"). As for deterrence, the Smith Court

---

[4] At oral argument on this motion, plaintiff argued that historically, putting a person's offenses out in front of the public has been done as a punishment. This argument is precluded by the Smith Court's analysis of this factor.

9

found that even though Alaska conceded that the statute "might deter future crimes," that was not enough to find that the statute was punitive. In general, "even if the objective of the Act is consistent with the purposes of the Alaska criminal justice system, the State's pursuit of it in a regulatory scheme does not make the objective punitive." Smith, 528 U.S. at 94. Moreover, "Any number of governmental programs might deter crime without imposing punishment. 'To hold that the mere presence of a deterrent purpose renders such sanctions "criminal" . . . would severely undermine the Government's ability to engage in effective regulation.'" Id. at 102 (quoting Hudson, 522 U.S. at 105).

As for retribution, the Smith Court rejected the argument that the statute was retributive "because 'the length of the reporting requirement appears to be measured by the extent of the wrongdoing, not by the extent of the risk posed.'" Smith, 538 U.S. at 102. The Court reasoned that even though the statute "differentiates between individuals convicted of aggravated or multiple offenses and those convicted of a single nonaggravated offense," this differentiation is also "reasonably related to the danger of recidivism," a legitimate regulatory concern. Id.

On the fourth factor, in reviewing the nearly identical statute in Smith, the Court stated that "the Act has a legitimate nonpunitive purpose of 'public safety, which is advanced by alerting the public to the risk of sex offenders in their communit[y].'" Smith, 538 U.S. at 102 03 (quoting the appellate decision under review). The Smith Court also rejected the argument that the statute was not narrowly enough drawn to accomplish the stated purpose, saying a statute "is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." Id. at 103.

On the fifth factor, the Smith Court held that the nearly identical reporting requirements of the Alaska statute were not "excessive" in relation to the stated goals of the legislation. The imposition of the reporting requirements without any individual findings of dangerousness were found not be excessive. Id. at 103 04. The duration of the reporting requirements were found not to be excessive. Id. at 104. The wide dissemination of sex offender information was found not to be excessive. Id. at 104-05.

////

C. <u>Plaintiff's allegations</u>

The question for the court on this motion to dismiss is whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). Given the plain non-punitive *intent* of Section 290.46, as discussed above, plaintiff's complaint must therefore allege facts showing that the law has a punitive *effect* sufficient to "override" that legislative intention.

As the Complaint now stands, there are no such facts alleged. Instead, the sole allegation even approaching such facts states: "The Defendants are applying this said Law in its punitive nature to continue to affect Plaintiff in violation of the Ex Post Facto Clause . . .." Complaint at 11 ("Statement of Facts"). This is not enough. While detailed facts are not required in a complaint under Fed. R. Civ. P. 8, the factual allegations must allow the court to draw the reasonable inference that a punitive effect arises from the operation of the law sufficient to violate the Ex Post Facto Clause.

Normally, this deficiency would lead to an order dismissing the claim and permitting plaintiff to amend. However, at oral argument on this motion, plaintiff conceded that he could not allege any facts that would support any claim or inference that the law was punitive in effect. Instead, according to plaintiff, he filed this lawsuit because of concern about the punitive effects that the law *could* have, rather than based upon any actual effects. Plaintiff stated that his objection to the law arose specifically from the website dissemination of offender information, and not the routine public access to that information available through law enforcement authorities. He speculates that people who actually need this information can access it and use it for the purpose of protecting others, whereas those who "roam" the Internet looking for this information are likely to use it to cause harm to others.

Even if plaintiff were to amend his complaint to allege these speculations, the complaint would be subject to dismissal. <u>See</u> <u>Twombly</u>, 550 U.S. at 555 (complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level"). Accordingly, it would be futile to permit amendment of this Complaint.

11

## VI.  CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that defendants' request for judicial notice (ECF No. 31 at 12 n.6), is DENIED as moot, and

IT IS HEREBY RECOMMENDED that:

1.  Defendants' Motion To Dismiss (ECF No. 31), be GRANTED, and the Complaint be DISMISSED in its entirety, without leave to amend; and

2.  The Clerk be instructed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: February 25, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE